## TUCKER VS. BOND ET AL.

A constable who levies an execution upon property claimed by another person than the defendant, is justified in selling it, as against the claimant, if upon a trial of the right of property, the verdict is that the property belongs to the defendant; such verdict is, however, no justification, under the statute, of the plaintiff, or other person interfering in the sale: but if there be a levy, which is a valid and subsisting lien upon the the property, and the defendant then sell the property, a sale under the execution is legal and a justification to all concerned: And so, in an action of tresspass, in such case, against the purchaser of the property, the plaintiff in the execution and his agents, and the defendants file a notice of justification setting up not only the trial and verdict, but a legal and valid sale, the court may well refuse to instruct the jury that the facts set up in the notice will only justify the constable.

The verdict of the jury on the trial of the right of property levied upon under execution, being that the execution is a "lien upon, and bound the property,"— this is within the spirit and intention of the statute and equivalent to a finding it to be the property of the defendant in the execution.

The return of an officer upon an execution that he had levied it upon certain property is *prima facie* evidence that the levy was in fact made, and in such manner as to make it effectual.

If an execution be levied upon property, and by direction of the plaintiff, the sheriff permits it to remain in possession of the defendant, and returns the execution without sale, the levy will not continue a lien against intervening rights of other persons.

But the return of the execution without sale by the officer, under the impression that he had no power to sell—that his successor had qualified, and that it was his duty to make the sale—does not postpone the levy to the claims of purchasers or junior executions; nor does the fact of leaving the property in the possession of the defendant for a reasonable time, and without any fraudulent motive —the defendant retaining possesion as agent of the officer.

Where property levied upon is left in the possession of the defendant in the execution, and a purchaser at private sale has notice of the levy before his purchase, he is not deceived by the property remaining in the possession of the defendant; and evidence of such notice may well be considered by the jury in an action of trespass by him against a subsequent purchaser at a sale under the execution.

*Appeal from Sebastian Circuit Court.*

Hon. JOHN M. WILSON, Circuit Judge.

GARLAND & RANDOLPH, for appellant.

If the facts set up in the notice are sufficient to justify, they enure to the benefit of the officer alone, and not to his co-defendants. See *Sanders vs. Hamilton*, 3 *Dana* 550, *and cases cited.*

A finding of the jury, on a trial of the right of property, before a constable, that the execution is a lien on the property, would not justify the officer in selling, and the mere indorsement of a levy upon the execution without taking the property into possession, will not bind it. *Hull vs. Southworth*, 5 *Wend.* 265; *Westwelt vs. Pinckney*, 14 *Wend.* 123; 4 *Wend.* 446, 550; 7 *Halstead* 352.

If the defendant in an execution retains possession of the property after levy, it raises the presumption that his possession is legal. *Slocomb vs. Blackburn*, 18 *Ark.* 309.

GREEN J. CLARK, for the appellees.

The verdict of the jury which tried the right of property between the defendant in the execution and the claimant, being adverse to the claimant's right, was a justification to the officer in selling the property, and, of course, if he was justified in selling, the other defendants were justified in purchasing. See *Gould's Dig., p.* 676, *secs.* 161, 165. It is not expected that such a verdict should be formally written with technical accuracy or legal precision: it is sufficient if the decision be against the claimant's right.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was an action of tresspass brought by Edward Tucker against Thomas Bond, Wm. H. Gardenhire, Wm. Barnes, and Edward C. Moore, and determined in the circuit court of Sebastian county.

The declaration charged the defendants with taking and converting twenty-three head of hogs, the property of the plaintiff.

The cause was submitted to the court, sitting as a jury, upon the general issue, and notice of special matter in justification, and finding and judgment in favor of defendants.

Upon the trial, the plaintiff submitted *fourteen* propositions, and asked the court to declare them to be the law of the case; the court refused the 3d, 6th, 7th, 9th, 11th, 13th, and 14th, and approved and declared the law to be as expressed in the others.

The hogs in controversy were purchased by the plaintiff of James Moore, about the 10th of October, 1856, at which time there were three executions against Moore, in the hands of the defendant, Bond, the constable of Sugar Creek township, where the parties resided, issued by a justice of the peace of the township.

Two of the executions were not levied upon the hogs before Moore sold them to the plaintiff; and the court declared the law to be, that they were not *liens* upon the hogs, which disposed of them, but whether correctly or not, need not be decided, as the law was so declared at the instance of the plaintiff, who, of course, does not complain of a decision in his favor.

The other execution was issued on the 12th July, 1856, to the defendant, Gardenhire, who was then constable of the township, and who levied it upon the hogs, as the property of Moore, on the 31st July, and advertised them to be sold on the 10th of August; but returned the execution without selling them under the belief, as stated in his return, that the defendant, Bond, who succeeded him in the office of constable, had qualified as such, before the day fixed for the sale.

The execution was renewed by the justice of the peace, and was in the hands of Bond, with the levy made by Gardenhire, indorsed, at the time Moore sold the hogs to the plaintiff.

Bond summoned a jury to try the right of property in the hogs, the jury found that they were subject to the execution, and a portion of them were afterwards sold by Bond, under the execution, and purchased by the defendant, Barnes. The other defendants advised and encouraged the sale.

When Gardenhire levied on the hogs, he left them in the pos-

session of Moore, the defendant in the execution, who drove them to the residence of Tucker, the plaintiff in this suit, after he pur-chased them, and they were there, in a pen, at the time of the trial of the right of property, and the sale under the execution.

The third legal proposition submitted by the plaintiff, and refused by the court, is as follows:

" 3d. That the facts set forth in the notice of justification, if true, could do no more than justify the officer in selling, and would not justify the plaintiff in execution, or others concerned in committing the tresspass."

This proposition was properly refused, because it applied to the facts " *set forth in the notice of the justification*" generally, and without discrimination—and if it had been declared to be the law, would have swept away the defence of all the defendants, except Bond, the constable, who made the sale of the hogs.

The notice set forth the issuance of the execution to Gardenhire, the levy made by him upon the hogs, the placing of the renewed execution in the hands of Bond, with the subsisting levy indorsed, etc., as well as the trial of the right of property, etc.

Had the proposition been confined to so much of the notice as recited the trial of the right of property, and the verdict of the jury, it would no doubt, have been good law.

For, as remarked upon a similar statute, (*Sanders vs. Hamilton*, 3 *Dana* 550,) the legislature have thought fit, owing to the perilous condition of the constable, to authorize him to summon a jury to try the right of property, when claimed by a person other than the defendant in the execution, whose verdict, (that the goods belong to the defendant,) as against the claimant, justifies the constable in selling the property levied on. But the legislature have not thought fit to provide the same security for the plaintiff in the execution, or other persons interfering in the sale. *Dig.*, ch. 99, sec. 16, etc.; *Pennington vs. Yell*, 6 *Eng.* 235.

But if the levy made by Gardenhire was a valid and subsist-

ing lien upon the hogs at the time Moore sold them to Tucker, the after sale of them by Bond, under the execution, was legal and a justification to all of the defendants.

The *sixth* proposition submitted by the plaintiff, and refused by the court, is as follows:

" 6th. That the finding of a jury, on the trial of the right of property, before a constable, that the execution is a lien on the property, would not justify the officer in selling."

This proposition, though abstract in its terms, was intended to apply to the form in which the jury who tried the right of property in the hogs, before Bond, rendered their verdict.

The jury reduced their verdict to writing, and it was returned to the justice of the peace, but was handed to him by one of the parties, and not produced upon the trial. Several of the jurors, who tried the right of property, were introduced as witnesses, and testified that the verdict was in favor of the execution—that it was a lien upon, and bound the property—Tucker having bought the hogs of Moore after they were levied on, but before the trial of the right of property, some of the jurors were unwilling to state in the verdict that they found the hogs to be the property of the defendant in the execution, and they agreed upon a verdict that the execution bound the property.

The statute provides that " if the jury find the goods and chattles to be the property of the defendant in the execution, the verdict shall, as against the claimant, justify the officer in selling such goods and chattels."

The verdict was within the spirit and intention of the statute. The hogs were the property of the defendant in the execution at the time they were levied on; before the trial of the right of property he had sold them to Tucker, and the jurors could not conscientiously find that they were still the property of the defendant in the execution, but they found the substance of what the statute required to justify the constable in selling—that the property was subject to the execution.

It follows that the court did not err in refusing to declare the sixth proposition to be the law of the case. The 7th, 9th and

11th propositions refused by the court, assert the law to be, in substance and effect, that the constable could not make a valid levy upon the hogs without taking them into his possession; and that by leaving them in the possession of the defendant in the execution, the levy became ineffectual as against the plaintiff, Tucker, who subsequently purchased them of him, etc.

No witness testified that he was present when Gardenhire levied on the hogs. In what manner he made the levy does not appear, otherwise than from his return upon the execution, in which he states that he levied on the hogs and advertised them for sale, etc. The return was read in evidence, and was *prima facie* evidence in his favor, as well as of the other defendants, that the levy was in fact made, and in such manner as to make it valid. In *Cornell vs. Cook*, 3 *Cow. R.*, the court, per SAVAGE, Ch. J., said: " The first question is, whether the endorsement of a levy upon the execution, in the plaintiff's hands, and by the plaintiff himself, is sufficient evidence of the fact, to enable him to maintain trover or trespass, against a third person, who intermeddled with the property levied on. We have several times decided, and I think correctly, that such an endorsement is *prima facie* sufficient. It is an official act required by the statute; and every presumption is in favor of a public officer's faithful performance of his duty. It seems to be sufficient, also, upon the ground of necessity; as an officer cannot be supposed to carry witnesses with him to prove every levy, or other official act required of him."

The evidence conduces to prove that the hogs were left in the possession of Moore, after they were levied on by Gardenhire, and remained in his possession until he sold them to Tucker, and drove them to his residence. Several witnesses saw them in a flock or *bunch*, as they termed it, in the range where they had been in the habit of using, after they were reported to have been levied on, and advertised for sale, etc.

In *Slocumb, Richards & Co. vs. Blackburn*, 18 *Ark.* 315, we held, in accordance with a well established rule, that where personal property is levied upon, and by direction of the plain-

tiff, the sheriff permits it to remain in possession of the defendant, and returns the execution without a sale, the levy will not continue a lien against intervening rights of other persons.

Here the execution was not returned by direction of the plaintiff, but the constable returned it under the impression that his successor had qualified, and that it was his duty to make the sale.

" It is not necessary that an assistant officer should be left in the possession of the goods levied on, or that the goods should be removed. They may be left in the possession of the defendant, or of a receiptor, with or without bond and security. The officer, by thus leaving them, makes himself responsible to the creditor for the goods; but does not abandon his levy so far as the debtor is concerned. Leaving the property in possession of the debtor for a reasonable time, and without any fraudulent motive, is not *per se* fraudulent. But if the property is so left for an unreasonable time, and the debtor is permitted to exercise an unlimited dominion, and to sell, consume, or dispose of it as his own, this is evidence of a fraudulent use of the execution, so as to postpone the levy to the claims of *bona fide* purchasers, or junior executions. And if the officer voluntarily permits the defendant to regain possession in his own right, and not as agent or bailiff of the sheriff, the levy may be postponed to one subsequently made."

Thus the law is stated by Mr. GWYNNE in his work on *Sheriffs*, and he has made a fair condensation of cases cited by him, and others which we have examined.

Upon the facts of this case, we think the court did not err in refusing the proposition in question.

Nor did the court err in refusing to declare the law to be, as expressed in the plaintiff's 13th proposition, that the evidence tending to show that he had notice of the levy before he purchased the hogs of Moore, was not to be considered under the issues, etc., because if he had such notice he was not deceived by the hogs remaining in possession of Moore after the levy, and was not a *bona fide* purchaser, etc.

The 14th proposition—that the law of the case was for the plaintiff—requires no comment.

There being no motion for a new trial, we are not required to review the finding of the court upon the facts of the case.

The judgment must be affirmed.